## Smith Estate.

Argued April 27, 1964. Before Jones, Cohen, Eagen, O'Brien and Roberts, JJ.

 reargument refused July 20, 1964.

*Lynne A. Warren,* with him *Joseph R. Doherty, Alvah M. Shumaker,* and *McCloskey, Best & Leslie,* for appellants.

*James M. Houston,* with him *Gilbert D. Levine,* and *Rose, Houston, Cooper & Schmidt,* for appellees.

OPINION PER CURIAM, July 1, 1964:
Decree affirmed. Costs on estate.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

On this record, it is unjust and unnecessary to hold that testatrix's bequest of stock in trust for the benefit of the natural objects of her bounty is wholly adeemed. The majority, in concluding otherwise, fails to give adequate consideration to the mental and physical condition of the ninety-year-old testatrix and to the circumstances at the time she followed the recommendation of her advisor in affixing her mark to a letter directing the sale of the stock (five years after the execution of her will).*

I would hold that the stock was adeemed only pro tanto to the extent proceeds of the sale were used to

---

* The opinion of the auditing judge is quite revealing as to these circumstances. It states in part:

"By December 15, 1959 Mr. White [testatrix's advisor] had decided to recommend the sale of the stock. On that day he went to decedent's house, made his recommendation and presented her with a letter directed to First National Bank of Lawrence County directing it to sell her Shenango stock at the price offered. Because of her long-time association with the pottery company, decedent was upset to think that the pottery was going to be sold and was going out of the Smith family. However, she concurred in Mr. White's recommendation that the stock should be sold and started to write her signature on the letter to the bank, which Mr. White had prepared. She was physically unable to complete her signature and she, therefore, stated that her incomplete signature was to be treated as her mark. . . .

"Mr. White was satisfied that when she signed the letter directing the sale of stock, Mrs. Smith understood fully the nature of her act and the significance of the transaction. He recognized, however, that in view of her advanced age—she was approximately 90 years of age—and her weakened condition, some question might later be raised as to her capacity. . . .

pay taxes on the gain and other expenses of the sale. In my view, the net proceeds ($108,459.17) should be distributed to the trustees for administration under the provisions of the testamentary trust.

I would, therefore, reverse the decree below distributing the funds as residuary estate.

---

"Mr. White testified at length concerning his contacts with Mrs. Smith from the time her husband died in 1955. During this period he saw her several times a week. She was ill and was hospitalized for eight days in October 1956. When, after this illness, it came to his attention that Mrs. Smith had paid a certain bill twice, Mr. White concluded that she was getting a little confused in her mind, and in March of 1957 recommended that her affairs be handled by the bank. Thereafter, the bank took over her business affairs, keeping her accounts, making her bank deposits and paying her bills.

". . . Mrs. Smith was forgetful and occasionally became confused in her mind about current events. She remembered things that had happened in the past, but she frequently forgot recent occurences. She occasionally failed to recognize friends, but until within a few days of her death in 1961, she always recognized Mr. White and expressed pleasure at seeing him. Some days she was better than others. At the time when Mr. White was discussing with Mrs. Smith the offer to purchase her stock, Mrs. Smith did not remember how many shares she had and there were some days when she could not remember the names of all of her relatives.

"*About the time of the stock sale, Mr. Mansell of the bank suggested to Mr. White that if the stock were sold the question of ademption of the legacy in Mrs. Smith's will might arise and that perhaps Mrs. Smith would wish to execute a codicil to her will. Mr. White expressed the view that because it was hard for her to remember the names of all her close relatives and because he thought that she did not know the exact number of shares of stock she owned, she was not competent to make a codicil to her will. No one ever discussed with Mrs. Smith the ademption problem.*" (Emphasis added.)